Good morning, and may it please the Court. I'm Paul Fredenberg on behalf of the appellant, EZ Pedo, Inc. And I'd like to reserve five minutes of my time for rebuttal. Trade dress is the composite tapestry of visual effects. I wish I could take credit for that definition of trade dress, but I cannot. That is this Court's definition of trade dress in the Clicks Billiards case, which was penned by Judge McEwen in 2001. And I think it's important that we start to be kind of the object of a lot of cases today. I don't know what that means. It's really percolating. I've just been here a long time. That's correct, Your Honor. It's really percolating up in the district courts right now. And I think it's because of a perceived conflict that they have, which I will address, that they perceive that standard as conflicting with another standard that they believe they are bound by, which I will argue they are an incorrect perception. But I think that's important that we start there, because I think that's where the district court went wrong in this case, is I do not believe the district court correctly applied that principle that trade dress is not something that we should carve up into individual elements and ask, well, what about this element? Could it be modified? Would you still claim that? That's precisely what the district court did in this case. And, in fact, the Clicks Billiards case stated and it went further than just giving that definition, composite tapestry of visual effects, but it actually stated, quote, it is crucial that we focus not on the individual elements, but rather on the overall visual impression that the combination and arrangement of those elements create, end quote. That's easy enough, I think, fair enough to understand. And other courts have followed suit in the August Stork case, which is cited in our brief Seventh Circuit, said dissecting, essentially dissecting trade dress into components, quote, can cause a court to miss an overall similarity, end quote. I think that's the reason for this rule. But it they're not necessarily inconsistent if you have to identify what are the components that make up the composite, correct? I think that's right, Your Honor. And I would agree, I don't think that there are conflicting standards, but I think that the district courts are beginning to wrestle with the push and pull that they're perceiving, because what the district courts are doing is, on the one hand, you have trade dress as the composite tapestry of visual effects, but on the other hand, you have what the district court did in this case, which is as a matter of essentially pleading, as a matter of essentially putting the court and the defendant on notice of what it is that you claim as your trade dress. There are a number of courts outside of this circuit saying that you must articulate the specific elements which comprise your distinct dress. And those are listed in the record in the order at ER 14. What we can see is the district court actually makes a leap from the analysis as to whether something is inherently distinctive, which I think goes to the Clicks Billiards case and looking at the composite tapestry, and makes this leap over to what must a plaintiff do in the outset to define what it is claiming it owns as its trade dress. And the problem that the district court encountered here, the district court actually used the term strenuous burden, saying plaintiff had a strenuous burden. Well, wait a second. The Lanham Act doesn't say that there's a different pleading standard that would apply to trade dress claims. This is not a fraud claim where we have to plead it with particularity. And all of these district courts saying, well, this must be you must plead this with particularity, you know, that's that has no basis in the statute. It has no basis. It's not what Rule 8 says. There's no carve-out for trade dress claims. So the question then is what must a trade dress plaintiff do to put the other side on notice of a plausible claim, state a plausible claim for trade dress infringement under Twombly, Iqbal, Rule 8. That's the only standard that I'm aware of in this case. I don't think the district court properly applied that standard in the foundational really what serves as the foundation for the district court's decision in this case, which was not that the trade dress was not inherently distinctive. District court, there's a separate question. The first question is whether it was appropriately defined, whether it was defined to then reach whether trade dress as defined is inherently distinctive. And I think the district court conflated those two and sort of begins to go through the inherent distinctiveness analysis, but then ultimately the grounds for the dismissal for granting summary judgment, it's the court stated, quote, because it has not clearly defined its trade dress, plaintiff has raised no triable issue as to inherent distinctiveness. So my argument here for reversal is, first of all, I disagree with that. I think the complaint and everything in the record does state a plausible claim for trade dress infringement. I think it's more than plausible. And I do think, especially including the visual examples, that they are, at the very least, put on notice of what we are claiming constitutes our trade dress. The point of that being that my client is entitled to have its trade dress examined as under the inherent distinctiveness analysis, which actually hasn't happened yet, because the examination has been as to their definition. How did we get to that? I don't think we have a Ninth Circuit case that actually says you have to lay out the elements. We have cases from other circuits. I agree with that. And so do you think it would make sense in terms of resolving any ambiguity that we say you have to lay out the elements of your trade dress, recognizing that individual elements may not in and of themselves be protectable, but that you look at the totality? I think it would make sense to clarify the standard, but I don't know that that's how the standard should be clarified. And let me explain. Certainly, a plaintiff must do something by way of describing its trade dress. But not necessarily that one would list all of the elements. And I can give you an example. If we take the blue V2 CAD tooth, which I'm using as an example only because it's the simplest of the trade dress. It's just a blue computer-aided drawing. It's a deep blue color, which is sort of unique, and it's not the color of the actual product. The product is white like a tooth. And it's got vertices running across it, right? So what have we essentially described in the complaints? Is that what I've just described to you? It's a blue computer-aided drawing with vertices running across it. And it was specifically used to market and sell a very, very niche product, which is, you know, not just dental products. We're talking about pediatric zirconia dental crowns that require minimal preparation from the dentist. The dentist is putting in minimal prep time to set this crown. That's what the blue V2 crowns are being used for. The defendant used it to market and sell the exact same thing, their LP or less-prep line of products. So it's not just dental products. It's we're talking about something very, very narrow. But I have described that as a deep blue computer-aided drawing with vertices of a tooth with vertices. If, you know, the district court asked the questions, this is what the district court stated. It is unclear whether plaintiff's claimed trade dress focuses on computer-aided shaded teeth with the same vertices and angles. Well, so should I have listed that? So there are 7,000 vertices on this tooth, and here are the angles of each one. This one is at 30 percent. This one is 40 percent. So there is a line somewhere, Your Honor, in how many of the elements we have to define. Sotomayor, if this courtroom were a restaurant, and there's a lot of restaurant trade dress, and we were really claiming, for example, this upper part and the murals and that sort of thing, kind of in the old days of, you know, some of the Hard Rock Cafe or something, but the court would want to know, well, but are you including these benches, too? I mean, is this part of it? So there is a practical element, I think, for the district court to say, well, what's not included here? And we can't make a rule just for dental implants or these dental devices. We have to make a rule that would apply to restaurants, to Band-Aids and all kinds of other things. So in your view, what do you think is the reasonable scope of identification? I think that if it states a plausible claim for trade dress infringement, that puts the defendant on notice of what is being claimed. And here, I guess what I would offer to the court is that there is a, the way we got here with this order, which really was out of left field, it was really the, it was not what was briefed in summary judgment. That's in the record. When counsel called me to meet and confer on summary judgment, and my understanding of what counsel's really argument has been throughout this case, is a unique argument. It's the argument that because certain trade dress elements were stock photographs or were independently protectable intellectual property, that the incorporation of stock photographs into an overall tapestry that forms the trade dress means that's not protectable. And I said, thank you very much, counsel. I disagree because this is a look and feel case. It's like the two pesos case, where in the Mexican food restaurant, you don't have to prove that you are the creator of the floral carpet that has been. The sombreros and all the things that were in the. Precisely. In fact, in the Clicks Billiards case, I mean, here's an example. You know, they claimed that the video games, the counter, the bar top video games that were there were a part of their overall trade dress. Well, certainly those video games were copyrighted video games, that they didn't create there in-house at the billiard hall. But the fact that they're independent, independently protectable intellectual property doesn't mean that they can't be claimed as an overall part of trade dress. And the example that I will give to show the Court that we really mean that and I stand by that is the example of that lavender trade dress, which is not the subject of this appeal. But there, we don't have the same photographs. We actually have a photograph that my client took of its own dental patients, a dental patient, and it was this girl in a field of lavender and very, very, you know, beautiful imagery with the colors. And then what the appellee did was they went out and they actually found a very similar photograph. They couldn't find that photograph because that photograph was actually taken by my client, no longer using stock photography at this point. And they found a very, very similar photograph. And I'm still claiming that's a trade dress violation. It has nothing to do with the ownership of the photograph. It's that it is confusingly similar to the look and feel of my client's. Otherwise, you might have a copyright violation. Exactly, which hasn't been briefed here. That hasn't been briefed in this case. No copyright issue has been briefed or presented as a defense. And unless there are further issues. Kennedy, what does the trier of fact determine in this case? I'm sorry, Your Honor? What will the trier of fact determine? The trier of fact will determine a number of issues that are, that are, that remain disputed issues of material fact. The first is whether the trade dress that Ken, that the appellee has used year after year after year, what I believe is clearly intentionally so, is confusingly similar to the trade dress that my client has claimed and has adequately described. So that's the number one. You know, if it's confusingly similar, and then the trier of fact will determine damages, intent. I understand that part. I was trying to figure out what it will have to determine if this goes back down. The basic thing that you're talking about is the first issue here. And I think that's goes to the point of these questions, these rhetorical questions that the district court asked in its order about whether, you know, about these additional elements, about, well, you know, are you claiming that the, I mean, actually one of the questions going back to the, going back to the blue V-2, you know, does it matter that, that this is the same deep blue color? So if the, if the court were curious about that and I had offered, yes, it matters. We're claiming deep blue. I'm not claiming another color. Now, counsel will argue, oh, but it's, but folks have used different colors, and in fact, the appellant in this case has used different colors for different products. But that's, that has nothing to do with the trade dress that I'm claiming for that specific product. So do you want to save your remaining time? Yes, Your Honor. Thank you. Good morning. May it please the Court. Tim Madsen for the Applee-Macklin Dental Studio. So counsel made a couple opening remarks that, that need to be corrected. Number one, this was not a Rule 12 motion to dismiss, challenging the sufficiency of the complaint. Okay. The issue below, apart from ownership of the intellectual property, third-party intellectual property, is whether you can claim trade dress rights at all, whether you can claim protectable rights in short-term isolated advertisements employing common stock images. E.Z. Pito has cited no case that I'm aware of that grants trade dress rights at all in advertisements. The common trade dress mechanism is product packaging. All the cases make clear that labels and wrappers and containers are the trade dress that give rise to trademark rights. Vague aspects of a marketing theme or advertising has never qualified for trade dress protection. So counsel bypasses that and steps to the second point that there is protectable trade dress in three advertisements. Even though E.Z. Pito and other manufacturers of prefabricated dental crowns have used smiling children, have used pictures of teeth, of crowns, and a number of other images in the tapestry of what the consuming public dentists see. In fact, in the record, there's a ‑‑ there's testimony from a trade journal representative that nobody buys dental crowns because of the picture of a smiling girl. Okay? They all use them. So to try to isolate ‑‑ The district court's order on page four, and I see the same smiling girl. So is there just a general Lanham Act claim here in terms of confusion? No. This is a copyright case, but they do not have copyright, and so they manufactured a trade dress. What do you mean it's a copyright case? Well, typically an image. No, no. But there's not a copyright claim here. They have not raised a copyright claim because they cannot. My question, because the copyright isn't under the Lanham Act, my question is whether, you know, there's a general section 43 confusion protectability claim, whether you call it trade dress or something else. Not for advertising like this. An advertisement does ‑‑ No, I ‑‑ Yes. Is there a claim like that in this case? They are making a section 43A trade dress claim. That's where it arises under the Lanham Act. And so if you have ‑‑ I might not buy the dental crown because there's a nice young girl smiling, but I might think that it's the same company if I see exactly the same ad. Sure. I mean, that's the question. And that is ‑‑ That was the claim. And that's a confusion. That's a potential confusion. I'm not saying you would find these potential confusing, but one, they do look pretty identical to the untrained eye that looks at photos. So why wouldn't that be a claim that would have to go to a jury? Because once again, trade dress does not encompass advertising. Never has. There's no case that I'm aware of and no case that's ever been cited by the plaintiff where a court recognized trade dress rights in advertisements. On the other hand, is there a case that says advertising can never constitute trade dress? There is not. There is not. But all the cases, if you look at the cases cited by the appellant, two pesos, it's a retail establishment. That is, you know, in trademark, Class 41, restaurant services, that's the product that people see. Clicks, billiards, same thing. A pool hall where they're looking at all the different things in the pool hall, Fuddruckers, and so on down the line. What does trade dress include? Just a site of a restaurant or advertising that's done at these trade organizations like the Dental Society or whatever they've come up with? Sure. So Walmart stores, the U.S. Supreme Court decision from 2002, said it must be a definite intangible thing such as a label or wrap or container used in the packaging of a product. It could be even the look of the product. Okay? So that's the boundary of trade dress protection. All the cases deal with just that. Containers, wrappers, the Klondike bar, the Louis Vuitton bag, the Barbie doll, and so on down the line. These are all either the products or the packaging of the products. At the lower court level, the district court asked counsel, do you have any case that establishes look and feel beyond those things? And the answer was no, there aren't. There's been discussion about websites. But that's not an issue in this case, and the Ninth Circuit has never granted trade dress rights in websites. And they've not claimed it here. So the district court says we have false advertising, federal unfair competition. That was my reference to Section 43A of the Lanham Act. And so is there a general unfair competition claim, whether you call it trade dress or not? Yes. There would be a companion. I think all their claims arise out of trade dress. They said that at the lower court, that this is a trade dress claim. They're not making any other claims. Do you have a case that says if you have, excuse me, somebody have a recording device? That actually was my voice. I heard echo on the tape. Oh, maybe there's just some odd thing going on. It might be a reverb. Do you have a case that suggests that something could not constitute trade dress because incorporated within the look and feel or the overall trade dress, there may be other protectable copyright or trademark elements? No. No case that I'm aware of, and particularly not in an advertising context. Let me go. I mean, if they, if there were legitimate trade dress and incorporated in there were either stock photos or copyrighted photos, that wouldn't preclude determination of trade dress in your view? Well, we made the argument at the lower court that using third-party copyrighted images under a license that says you cannot claim trademark rights in it would take that out of the equation. Not aware of a case on that point. So just the mere inclusion of copyrighted or trademark-related items wouldn't preclude trade dress. You're just saying in this case because of the licensing features. Well, if the product packaging has copyrighted images or the trademark, that, but also like a Reese's peanut butter cup, it's orange and black and it's got the wrapper. The word Reese's is a trademark. That's not trade dress. But the look and feel of the wrapping would be trade dress. Let me ask you more of a general background question about something I don't understand. The market generally is like juvenile crowns, is that right? Yes. Now, is that a, like dentists consider that a commodity? So it's a prefabricated zirconia crown. Is it treated as a commodity? So they, yes, they purchase it from the manufacturers and then use it with their patients. Just like they buy other crowns, adult crowns. Correct. Now, so what is this? Is this an attempt to distinguish, you know, your crown from somebody else's crown? So in the advertising context, I don't believe there's distinguishing crowns. Everybody just uses pictures of smiling children because that's the ultimate market. Well, so what are you saying? Source doesn't matter? Well, what I'm saying is that the advertisement, the alleged trade dress is not a source identifier in the sense of Walmart and two pesos and the other trade dress cases. So why do you use the same photo? Pardon? Why does your client use the same photo? Didn't know. Went online, it's on a iStock photo site. It was listed as the most popular picture of a girl. They grabbed the same one, purely incidental. There's no evidence. Was there a cease and desist letter on that? Never. And in fact, it ran in a magazine and it was put on some different packaging. But there was never a statement from. When you say it was put on some different packaging. Or different crowns. Not zirconia that are at issue in the case. But that was us, not Easy Pito. They did not put the beach girl image on any packaging. Or the other alleged trade dress here. I'm getting back to this tapestry, though. I think it's an important point. Because we're trying to figure out the totality of the images and if there's other things in there. In this case, Easy Pito has claimed a broad look and feel of its advertisements. But if you look at the description of the alleged trade dress, the only elements that are claimed infringed are the common stock photos. There's no other element, if you look at the side-by-side of the two advertisements, that's claimed infringed. Or claimed as part of the look and feel. Is that why there's no copyright involved here, because it's common stock? Yeah. Yeah. They could not bring a copyright. And that's typically what happens in advertising cases, is you would hire a photographer, take the image, and then sue for copyright infringement. Not trade dress. That's why there aren't any cases on trade dress in advertisement. Is it your position, one of your positions, is that advertising can never qualify as trade dress? I think that may be a bit of a stretch, because I do believe, it wasn't cited in the materials, but I believe there's a tobacco case, RJR Reynolds for the Marlboro Man, and the whole point there was not inherent distinctiveness, it was secondary meaning. And that that had run for years, 20 years, and everybody knew the Marlboro Man. And so if you copied that, I think you could make a trade dress case. The distinction here is, number one, no secondary meaning, which was claimed in the complaint. Not inherent distinctiveness. Because to be protectable, the trade dress has to be distinctive. It's either inherently distinctive, or it gets distinctiveness through secondary meaning. That's what happened in the Marlboro Man case. Here, their claim, in a nutshell, is the moment we grabbed an iStock photo image and put it in an ad, we immediately had trade dress rights. And so that when you did it the next month, whether you knew it or not, you infringed our trade dress. That's not the law. They did not satisfy, this is not an issue on appeal, but they did not satisfy secondary meaning. They had nothing to establish source identification in the market. And so then they're left with inherent distinctiveness. The law is clear on what you need to show for inherent distinctiveness. You must show that your trade dress, your alleged trade dress, is so unique that a buyer will rely on it to differentiate the source of the product from which it is associated. It must be in the intrinsic nature that it serves to identify a particular source. Are you quoting from some authority? Sorry, that was from Walmart, the U.S. Supreme Court. There is no question that in this market, hundreds of photographs of children are used. There is no evidence that any particular photograph serves as a source indicator for any particular company. And in fact, my client, Macklin, has used images that other companies have used, all-stock images. It would never sue for trade dress. It couldn't. Is that part of the test of inherent distinctiveness is that it has to point to a source? So it has to. You can't just say, and what EZPIO did in their briefing is say, beach girl is fanciful and arbitrary. That's it. You actually have to show facts that would demonstrate that the alleged trade dress is so unique, unusual, unexpected, that's from the Morton case, that it will automatically be perceived by customers as an indicator of origin. You have to establish that. They just say, well, it's a picture of a smiling girl. It's inherently distinctive. That's not the law. They must show and clearly articulate, and this is what the court was getting to on defining their trade dress. They have to clearly articulate what is so unique and unusual about your trade dress. Well, one was a crown. Well, they're selling crowns. That's not unique. That's not original. And I believe it's Wal-Mart that said that color, this deep shade of unique blue, color can never be inherently distinctive. So that's out. No question. It's a crown. It's the product itself. Color can't be inherently distinctive. But it can be trademarkable. Sure. But you have to show, kind of like the T-Mobile case, that unique magenta that you used for 20 years. Secondary meaning we have. Spent $4 billion. Yeah. Right. Right. The sticker company with the yellow. Right. That we all use. Right. I mean, it has to be instantly associated in the minds of consumers. Well, clearly not the case with Beach Girl. Clearly not the case with the crown. And the watch engineered for, it's a watch. So what? Ours was, Macklin's were gears. Completely different slogans. So, you know, this was a summary judgment case. Easy Pedo carried the burden of showing inherent distinctiveness. That's the only issue on appeal, by the way, is whether or not these ads are inherently distinctive. We submit they clearly aren't. We submit that use of third-party common stock images in short-term isolated advertisements can never qualify for trade dress. And this case should be dismissed. Thank you. Thank you. So I'll just briefly address the argument that the appellee didn't know that it was copying the trade dress. That's disingenuous, Your Honors. That doesn't pass even common sense mustard, looking at these images side by side. And if you look at these. That doesn't go to liability. It doesn't go to potential willfulness. Exactly. If there were liability. Exactly. It's a triable issue of fact. I think my client is entitled to go try that and to answer Judge Seiler's question. So is, you know, what are the triable issues, as Judge Seiler has asked? So is the issue of whether it was isolated or too isolated or infrequent to claim. First of all, two pesos. Let me ask you, were these obtained under the stock photo license where you're not permitted to claim trademark? That is not in the – that evidence is not in the record below. What happened was that counsel tried to bring agreements into the record below in evidence, which I objected to, saying we have no idea. There's nobody to authenticate this, where it came from. No one ever testified, yes, I agreed to this. Did you have evidence in the record as to the source of the photo? Oh, yes. They came from stock photography, but not from – there is no evidence that they came from stock photography barring the use in trade dress. And other than the photo, what is the – what is the claimed trade dress in the Beach Girl ad? So in the Beach Girl, Beach Girl trade dress is defined as – defined in the complaint as this campaign was centered around a unique nonfunctional stock photograph of a curly-haired girl on the beach in a white dress with magenta flowers with white tooth composites below, dark text containing information about the zirconia crowns, and identifying logos and contact information. So that's at ER 195. But it's critically important – counsel mentioned the Wal-Mart case. It's critically important that I address that case. But before you get there, I have a few more questions. The – apart from trade dress, do you have a general unfair competition claim under the Lanham Act? Yes, Your Honor. Was that at issue in the summary judgment? Well, it's – I think it is at issue because if the trade dress – if the trade dress claim is dismissed, the general unfair competition claim, based on my understanding of the law, will likely go with it under the Lanham Act, based on the allegations of the complaint. But, yes, we have asserted – But, see, that's kind of different. I mean, trade dress is one thing. But to say that even though if they have a right to go get that stock photo and buy it, there may well be consumer confusion in advertising, and that's just a general unfair competition claim unrelated to trade dress, but it appears that's not at issue here, correct? It's not at issue in this appeal, to my knowledge. I mean, it's really the Lanham Act claim based on the trade dress infringement, which has been dismissed. But I did want to address the Wal-Mart case with the Court's permission. That case is critically important to look at. It's, in fact, based on where counsel has taken this, it's the most important, because in that case, counsel has said that only essentially product packaging or products, some tangible thing, can constitute trade dress. The Supreme Court of the United States in the Wal-Mart v. Samarabro's case said not so. In fact, in that case, an opinion by Justice Scalia, the Court said, well, we look at the Tupesos case, and, in fact, the holding of the case was that that particular in that particular case was that products can never be inherently descriptive. So a product, but something else can't, right? So the counsel there said, well, look at the Tupesos case. The restaurant was the product. And, in fact, counsel has just made the same argument. That is not correct according to the United States Supreme Court. The United States Supreme Court in that case said, no, no. In the Tupesos case, the Mexican restaurant, the ambiance and the different elements that made up that trade dress was not the product. Instead, Justice Scalia said, that is more akin to product packaging or, and this is the critical part, to some tertium quid, some third thing, tertium quid, which is like product packaging, but is not that, which could constitute trade dress. The Supreme Court of the United States has opened the door and said that. Sotomayor So you basically are saying we should take Judge Scalia's talking Latin and stick advertisement in it. Is that your view? Certainly, if it's a descriptive, if it's a, if it's a source-identifying descriptive thing, and I think this is the circuit where we have the Googles and the Facebooks of the world. We have Web, Web companies. We have different types of, of, of companies showing their trade dress to the world in different forms and presenting it to their customers in different forms, which are not always a product or product packaging. And that's why the Supreme Court said tertium quid. There are some things that are not a product or product packaging. Thank you. Thank you very much. The case just argued. I thank both counsel for the argument this morning. Ezpito v. Macklin Dental is submitted. We'll next hear argument in U.S. Commodity Futures Trading Commission v. the Monex Credit Company.
judges: Siler, Tashima, McKeown